IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| HAROLD B. CORNISH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:04-CV-0945-N |
| | § | |
| THE CITY OF DALLAS, *et al.*, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Before the Court is Defendant City of Dallas ("the City"), Cecilia Hinojo, and Patricia Marsolais' (collectively "Defendants") Motion for Summary Judgment [94] and Defendants' Motion to Strike Plaintiff's Response [104]. Defendants contend Cornish failed to establish a genuine fact issue with regard to an element essential to either his 42 U.S.C. § 2000e, *et seq.*, claim, section 1983 claim, or section 1985 claim. Defendants accordingly seek summary judgment in their favor. Because Cornish failed to designate the specific facts that create a genuine issue of material fact, the Court grants Defendants motion for summary judgment. Because the Court grants summary judgment for Defendants, the Court denies Defendants' motion to strike plaintiff's response as moot.

## I. ORIGINS OF CORNISH'S COMPLAINT

Harold Cornish, an African American male, began his career with the Dallas Police Department ("DPD") as a civilian Public Service Officer in 1980. In 1986, Cornish witnessed the "Black Star Record Shop" incident in which two white officers were accused of an illegal search and arrest involving use of excessive force. Cornish testified in an

ORDER – PAGE 1

Internal Affairs Division ("IAD") investigation of the two officers. Following his testimony, Cornish claims he started experiencing reprisals, such as reprimands and unrequested transfers. Cornish filed a discrimination complaint with the DPD and Equal Employment Opportunity Commission ("EEOC") in 1986. Cornish claims he received another unrequested transfer in 1987 to a less desirable position as retaliation for his complaint.

The DPD ultimately terminated Cornish on March 24, 1999, citing numerous rule violations. The sustained allegations include using unnecessary or inappropriate force when Cornish pulled a woman through a car window by her hair, lying in a sworn statement, failing to provide his supervisor's name, reporting for duty out of uniform, sleeping on duty, failing to take appropriate action regarding a sexual harassment complaint, and offering and paying a City employee money to lie in an IAD investigation. *See* IAD Investigations 98-094, App. 1 at 106-284; 98-122, App. 2 at 790-1321; 98-154, App. 2-3, at 790-1321; 98-257, App. 3 at 1322-1421. Defendant Cecilia Hinojo, a Dallas Police Sergeant assigned to Internal Affairs, conducted investigation 98-122, which sustained unnecessary force allegations regarding Cornish pulling a woman through a car window by her hair. IAD Investigation 98-122, App. 2 at 790-1321.

On September 18, 1998, prior to his termination, Cornish filed a grievance with the Civil Service Board (the "Board"). The Dallas Police Department Grievance Committee reviewed the claim and denied Cornish's grievance in November, 1998. In December 2001, Cornish contacted Defendant Patricia Marsolais, the City's director of Civil Service, requesting a grievance hearing with the Board. Marsolais informed Cornish that the City's Personnel Rules afforded only current employees the opportunity to pursue grievances, and

therefore prohibited her from processing his grievance.  Marsolais Affidavit, App. 6 at 3105-3109.  Marsolais did, however, schedule Cornish to address the Board and ask for a hearing on his grievance.  Cornish addressed the Board on February 4, 2002, and the Board denied his request, citing the Personnel Rules' limitation of such hearings to current employees.  Marsolais Affidavit, App. 6 at 3103-3104.

In January 2003, Cornish applied for a job with the Texas Department of Criminal Justice ("TDCJ") and signed an authorization to release information regarding his work history.  TDCJ sent an employer reference form to the DPD, and Cecilia Hinojo, in her position as Employee Records Supervisor, filled out the form and returned it.  The form notified the TDCJ that Cornish was terminated from the DPD and that he was not eligible for rehire because he was terminated for disciplinary reasons.  Hinojo Affidavit, App. 6 at 2585-2587.

In May 2004, Cornish brought this action alleging numerous violations of federal law.  Cornish alleged the City discriminated against him because of his race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; that individual defendants in their individual capacity violated 42 U.S.C. § 1983 by denying him equal protection under the law; and that individual defendants in their individual capacity violated 42 U.S.C. § 1985 by conspiring to discriminate against him and to deprive him of his right to employment.  However, after stipulating to the dismissal of certain defendants[1] and

---

[1] *See* Orders, dated February 16, 2006 & February 21, 2006.

conceding certain claims in his response to this motion,[2] only Cornish's section 1983 claim against Hinojo and Marolais and his Title VII discrimination and retaliation claim against the City remain.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides that a party moving for summary judgment has the burden of showing that there is no genuine issue of fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Harbor Ins. Co. v. Trammel Crow Co.*, 854 F.2d 94, 98 (5th Cir. 1988). When a summary judgment motion is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. PRO. 56(e); *see also Johnson v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("While the party opposing the motion may use proof filed by the movant to satisfy his burden, only evidence – not argument, not facts in the complaint – will satisfy the burden.") (internal quotations and citation omitted). "[T]he Court has no duty to search the record for triable issues. The Court need only rely on the portions of submitted documents to which the nonmoving party directs." *Glosson v. Southwestern Bell Wireless, Inc.*, 1999 WL 102802 *3 (N.D. Tex. Feb. 23, 1999) (internal citations

---

[2] Cornish stated in his response to this motion that he concedes all claims against individual defendants except for Hinojo and Marsolais, and that he asserts only 42 U.S.C. § 1983 claims against them. Pl. Br. at 2. Cornish further stated in his response that only the Title VII discrimination claim remains against the City. Pl. Br. at 19.

omitted).  If the nonmovant fails to discharge his burden of designating specific fact issues, summary judgment must be entered against him.

### III. CORNISH FAILS TO DEMONSTRATE THAT HINOJO AND MARSOLAIS UNREASONABLY VIOLATED A CLEARLY ESTABLISHED RIGHT

Hinojo and Marsolais move for summary judgment on the basis of qualified immunity.  Cornish claims Hinojo violated section 1983 by falsely informing TDCJ that Cornish was ineligible for rehire because of past disciplinary action; Cornish claims Marsolais violated section 1983 by refusing to schedule a grievance hearing upon request. "Section 1983 provides a cause of action against any person who, acting under color of state law, abridges rights created by the Constitution and the law of the United States." *Beanal v. Freeport-McMoRan, Inc.*, 969 F. Supp. 362, 375 (E.D. La. 1997) (citing ERWIN CHEMERINSKY, FEDERAL JURISDICTION § 8.1 (2d 1994)).  "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998), cert. denied, 525 U.S. 1154 (1999).  The plaintiff must also pierce the defendant's qualified immunity from civil liability.

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[3] *Harlow*

---

[3] Entitlement to qualified immunity is a two step inquiry that asks: (1) whether the facts allege a violation of a constitutional right, and (2) whether such right was clearly established.  *See Wilson v. Layne*, 526 U.S. 603, 609 (1999) ("A court evaluating a claim of

*v. Fitzgerald*, 457 U.S. 800, 818 (1982). In the Fifth Circuit, once a "defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). That is, "a plaintiff has the burden to rebut the qualified immunity defense by establishing that the official's allegedly wrongful conduct violated clearly established law. [The Fifth Circuit does] not require that an official demonstrate that he did not violate clearly established federal rights . . . ." *Estate of Davis ex re. v City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005) (citing *Pierce v. Smith*, 117 F.3d 866, 871 (5th Cir. 1997)).

Cornish has failed to demonstrate that Hinojo and Marsolais have unreasonably violated a clearly established right. In his response, Cornish states that he concedes all but his section 1983 claims against Hinojo and Marsolais, but never again mentions those claims or attempts to rebut Defendant's qualified immunity defense; nowhere does Cornish provide evidence that defendants Hinojo and Marsolais's "allegedly wrongful conduct violated clearly established law." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). "On summary judgment . . . the plaintiff can no longer rest on the pleadings," but must instead provide evidence to overcome a claim of qualified immunity. *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996). Because Cornish fails to meet his summary judgment burden, and because

---

qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation.'") (quoting *Conn. v. Gabert*, 526 U.S. 286, 290 (1999)). If the official's conduct "was objectively reasonable in light of the legal rules that were clearly established at the time of his or her actions," then the official is immune from suit. *Wilson v. Layne*, 526 U.S. 603, 614 (1999); *see also Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (explaining that qualified immunity constitutes "*immunity from suit* rather than a mere defense to liability . . . .") (emphasis in original).

qualified immunity constitutes "*immunity from suit* rather than a mere defense to liability," the Court grants Defendants' motion for summary judgment in favor of Hinojo and Marsolais on Cornish's section 1983 claims against them. *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985).

### III. CORNISH FAILS TO ESTABLISH THE EXISTENCE OF A GENUINE ISSUE OF MATERIAL FACT

The City moves for summary judgment on the ground that Cornish can provide no evidence to support his lone remaining claim, which arises under Title VII, 42 U.S.C. § 2000e *et seq.* Title VII prohibits employers from "discharg[ing] an individual, or otherwise discriminat[ing] against an individual . . . because of such individual's race, . . . or national origin." *Id.* at § 2000e-2(a)(1). Title VII further prohibits an employer from "discriminat[ing] against any of his employees . . . because [the employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." *Id.* at § 2000e-3(a). Cornish presents two claims under Title VII. First, Cornish claims the City violated Title VII because race was a motivating factor in his termination. Specifically, Cornish claims both that he did not violate the rule for which he was fired and that white employees who engaged in similar acts were not punished similarly. *See Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980) ("[T]he plaintiff must first demonstrate by a preponderance of the evidence either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly."). Cornish also claims the city violated Title VII by retaliating against

him for engaging in protected activity.[4]  Because Cornish fails to raise an issue of material

fact as to either claim, the Court grants Defendants' motion for summary judgment.

In making a Title VII claim, Cornish is strapped with the initial burden of establishing

a "prima facie case that the defendant made an employment decision that was motivated by

a protected factor."  *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1089 (5th Cir. 1995);

*see also Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) ("We have previously

held that the burden-shifting structure applicable to Title VII  disparate treatment cases . . .

is also applicable to Title VII unlawful retaliation cases.") (internal citations omitted).  Once

established, the burden then shifts to the City to produce evidence that the employment

decision was motivated by a legitimate nondiscriminatory reason.  If the City is able to

provide clear and reasonably specific nondiscriminatory reasons for its actions, then "the

presumption of discrimination derived from the plaintiff's prima facie case simply drops out

of the picture."  *Mayberry*, 55 F.3d at 1090 (internal quotations and citations omitted); *see*

*also Okoye v. Univ. of Texas Houston Health Science Center*, 245 F.3d 507, 513 (5th Cir.

2001) (explaining that a defendant must provide "clear and reasonably specific reasons for

its actions" before the burden of production will shift back to the plaintiff).  The burden then

shifts back to Cornish "to demonstrate that an issue of material fact exists and that the

legitimate reasons offered by the defendant were not its true reasons, but were a pretext for

---

[4] The protected activities in which Cornish allegedly engaged, include filing EEOC complaints, filing grievances alleging race discrimination, filing suit against the City for civil rights violations, investigating and compiling statistics on DPD discipline by race, promoting black officers' interests through activities as a member and officer of the Texas Peace Officers Association, and assisting an investigation of the DPD by Civil Rights Division of the United States Department of Justice.  Pl. Br. at 24.

discrimination." *Okoye*, 245 F.3d at 512 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000)). Cornish may attempt to show pretext by presenting "circumstantial evidence . . . or by proving direct evidence of discrimination." *Okoye*, 245 F.3d at 513; *see also Little v. Republic Ref. Co.*, 924 F.2d 93, 96 (5th Cir. 1991) (explaining that the Fifth Circuit "not prepared to hold that a subjective belief of discrimination however genuine, can be the basis of judicial relief.").

### A. Cornish Fails to Prove a Prima Facie Case of Race Discrimination

The City seeks summary judgment on Cornish's race discrimination, contending Cornish cannot produce any evidence of race discrimination. To establish a prima facie case for his first claim – a "work-rule" violation claim – Cornish must show "either that he did not violate the rule or that, if he did, white employees who engaged in similar acts were not punished similarly." *Green*, 612 F.2d at 968. Cornish attempts both avenues. That is, Cornish claims he did not violate the rules for which he was discharged, and, even if he did, other white officers received lesser or no discipline for similar actions. However, Cornish fails to state a prima facie case under either route.

First, Cornish fails to show that he did not violate the rule. In both his complaint and response to this motion, Cornish conclusorily contends he did not violate any rule, but fails to provide any evidence to support this claim. Instead, Cornish submits what appears to be an outline of his argument – Cornish merely recounts the alleged violations and inserts a reminder to "include [an] explanation and identify pertinent exhibits" to prove he did not violate the rule. *See, e.g.*, Pl. Br. at 22. Whether an indication that Cornish cannot prove he

did not violate the rule, or oversight on the part of his attorney, either way, Cornish fails to establish a prima facie case.

Cornish further fails to show that "white employees who engaged in similar acts were not punished similarly." *Green*, 612 F.2d at 968. To establish a prima facie case on this route, Cornish "must show that white employees were treated differently under circumstances 'nearly identical' to his." *Mayberry*, 55 F.3d at 1090. As the Fifth Circuit recently explained, "for employees to be similarly situated those employees' circumstances, *including their misconduct*, must have been 'nearly identical.'" *Perez v. Texas Dept. of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004) (emphasis added). In his complaint, Cornish alleges that several employees outside the protected group were treated differently under circumstances "nearly identical" to his. For example, Cornish alleges allegations were sustained against him for official oppression when pulling a woman from her car by her hair, while the allegations against Officer Pollard, a white police officer, were not, despite grabbing the hair of a paraplegic man around the same time. However, Officer Pollard – as well as the other officers cited by Cornish – had a different assignment, job, and supervisor. Furthermore, none of the officers mentioned in Cornish's complaint engaged in all of the acts of misconduct for which Cornish was terminated. Most of the officers engaged in only a single act of misconduct, and none more than four.[5] Therefore,

---

[5] *See, e.g.*, IAD Investigation 94-314F, App 5 at 253-2584 (Michael Beattie, as senior corporal assigned to the Youth and Family Crimes Division, was alleged to have pointed a pistol at another officer. This allegation was sustained); *see also* IAD Investigation 92496F, App. 5 at 2431-2522 (Michael Flusche investigation); IAD Investigation 94-281F, App 5 at 2372-2430 (Jane Schmidt investigation); IAD Investigation 96-030, App. 5 at 2237-2372 (Frank Gorka investigation); IAD Investigation 97-194, App. 4 at 1744-1840 (Robert Pollard

given the disparity in conduct and the differences in rank, assignment, and supervisor, the named officers' circumstances were not "nearly identical" to Cornish's. *See Wallace v. Methodist Hosp. Sys*, 271 F.3d 212, 221 (5th Cir.2001) (The "conduct at issue is not nearly identical when the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer."). Accordingly, Cornish fails to establish a prima facie case.

Even if Cornish has established a prima facie case, he fails to carry his burden of "demonstrat[ing] that an issue of material fact exists and that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Okoye*, 245 F.3d at 512 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000)). In its motion for summary judgment, the City offers several legitimate, nondiscriminatory reasons for terminating Cornish. Most prominently, the City cites the numerous sustained violations as its reason for terminating Cornish. To support its claim, the city provides a substantial amount of evidence, including all relevant reports and statements that establish Cornish did in fact violate the stated rules.[6] The City further provides substantial evidence, showing that the named officers' circumstances were not nearly identical to Cornish's.[7] In response, Cornish fails to adduce any evidence that the City's stated legitimate justification was a pretext for discrimination. In fact, Cornish's response is devoid of any evidentiary

investigation).

[6] *See* IAD Investigations 98-094, App. 1 at 106-284; 98-122, App. 2 at 790-1321; 98-154, App. 2-3, at 790-1321; 98-257, App. 3 at 1322-1421.

[7] *See infra* note 5.

ORDER – PAGE 11

support whatever for his claim.  At best, Cornish's response is a draft document, as it contains numerous blank spaces in which argument was clearly intended, but never made. *See, e.g.*, Pl. Br. at 20-24.  Cornish also fails to include an appendix through which the Court might search for evidence were it so inclined.  *See* Local Rule 56.6(a).  When a summary judgment motion is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial." FED. R. CIV. PRO. 56(e).

Finally, Cornish failed to respond or object to Defendants' request for admission, meaning all matters set forth in Defendants' request are deemed admitted.  FED. R CIV. PRO. 36(a).  Therefore, pursuant to Rule 36(a), Cornish admits that (1) none of the Defendant's alleged discriminatory actions against him were motivated by purposeful discrimination, (2) his employment with the City was properly terminated, and (3) that he was not treated differently by the City than other similarly situated individuals.  Accordingly, the Court grants the Defendant's motion for summary judgment as to Cornish's claim for discrimination under Title VII.

### B. Cornish Fails to Provide Evidence of the Necessary "Causal Link" for a Retaliation Claim under Title VII

The City seeks summary judgment on Cornish's retaliation claim on the ground that Cornish cannot produce evidence of retaliation because Cornish cannot prove the causal link between the alleged protected activity and subsequent termination.  To establish a prima facie case that the City violated Title VII by retaliating against Cornish for engaging in protected

ORDER – PAGE 12

activity, Cornish must prove that "(1) [he] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse employment action." *Evans v. City of Houston*, 246 F.3d 344, 352 (5th Cir. 2001) (quoting *Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996)) (alteration added).   Cornish claims the City terminated him for filing race discrimination complaints with the Dallas Civil Service Board, DPD, Dallas City Council, and the EEOC, and thereby satisfies the first two elements of the prima facie case.[8]   *See* 42 U.S.C. § 20003-3(a) (protecting an employee who has made "a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."); *Burlington Indus., Inc., v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.").   However, Cornish fails to prove causation and thus fails to establish a prima facie case under Title VII.

"The ultimate determination in a Title VII retaliation case is whether the protected conduct was a 'but for' cause of the adverse employment decision." *Long v. Eastfield College*, 88 F.3d 300, 305 n. 4 (5th Cir. 1996).  That is, an employee cannot succeed on his claim for retaliation if he would have otherwise been terminated, even if "the protected conduct is a substantial element in a defendant's decision to terminate" the employee. *Id.*

---

[8] Although Cornish fails to provide any evidence supporting his claim, the Court views this motion in a light most favorable to Cornish and therefore finds, based on the allegations in Cornish's complaint and Defendants' evidence, that Cornish engaged in protected activity and was subsequently terminated.

However, "the standard for establishing the 'causal link' element of the plaintiff's prima facie case is much less stringent. . . . [A] plaintiff need not prove that her activity was the sole factor motivating the employer's challenged decision in order to establish the 'causal link' element of a prima facie case." *Id.* Instead, a plaintiff need only "show *some* connection between the protected activity and the adverse employment action . . . ." *Yerby v. University of Houston*, 230 F. Supp. 2d 753, 768 (S.D. Tex. 2002) (emphasis added). Cornish contends the proximity of the alleged protected activity in which he engaged and his termination satisfies the "causal link" element of the prima facie case.

Although the "[c]lose timing between an employee's protected activity and an adverse action against [her] may provide the 'causal connection' required to make out a prima facie case of retaliation," Cornish fails to establish the third element of the prima facie case. *Swanson v. General Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997) (citing *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)); *see also Boriski v. City of College Station*, 65 F.Supp.2d 493, 514 (S.D.Tex.1999) (explaining that a court may consider "the temporal relationship between the employee's conduct and discharge" to determine "whether a causal link has been demonstrated in the prima facie stage."). Cornish attempts to establish the third element of the prima facie case by alleging he engaged in protected activity for which he was subsequently terminated. Pl. Br. at 25. However, "the mere fact that some adverse action is taken *after* an employee engages in some protected activity will not always been enough for a prima facie case." *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 471 (citing *Swanson v. General Servs. Admin.*, 110 F.3d, 1188 n. 3 (5th Cir. 1997)). Rather, Cornish must put forth evidence that allows the Court to draw such an inference in his favor. In other

ORDER – PAGE 14

words, Cornish must demonstrate through a combination of evidence and temporal proximity that the City retaliated against him – the greater the period of time between engaging in the protected activity and his termination, the more evidence necessary to support an inference. Here, other than the four month period of time, Cornish presents no evidence of retaliation; he simply rests on conclusory allegations. Accordingly, Cornish fails to establish a prima facie case of retaliation under Title VII.

Even if Cornish has established a prima facie case for retaliation under Title VII, he fails to carry his burden of "demonstrat[ing] that an issue of material fact exists and that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Okoye*, 245 F.3d at 512 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 143 (2000)). In response to Cornish's retaliation claim, the City again asserts, and provides substantial evidence showing, that it fired Cornish for legitimate, nondiscriminatory reasons, and, again, Cornish's response is woefully lacking of evidence of pretext. Although Cornish sets forth the legal standard for establishing a prima facie case for retaliation, he leaves blank subsections titled, "Methods of Proof" and "Plaintiff's Prima Facie Case." *See* Pl. Br. at 26. He fails to provide evidence of retaliatory motive, of disparity between employer conduct toward employee prior to engaging in protected activity compared to after the protected activity, or that he was treated less favorably than similarly situated employees who did not engage in protected activity. Instead, Cornish conclusively claims retaliation, but conclusory allegations, speculation and unsubstantiated assertions are inadequate to support the nonmovant's burden on a Title VII claim in the summary judgment context. *See* FED. R. CIV. PRO. 56(e) (when a summary judgment motion is made and

ORDER – PAGE 15

supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing there is a genuine issue for trial."). Accordingly, the Court grants Defendants' motion for summary judgment.

### IV. DEFENDANTS' MOTION TO STRIKE IS MOOT

In addition to summary judgment, Defendants' move the Court to strike Cornish's response to Defendants' motion for summary judgment.  Defendants contend Cornish's response fails to comply with Federal Rule of Civil Procedure 56(e) and Local rules 56.4(a), 56.5(a), and 56.6(a).  Because the Court grants Defendants' motion for summary judgment, it deems this motion moot.

Signed December 12, 2006.

David C. Godbey
United States District Judge

ORDER – PAGE 16